May it please the Court, Nicholas Porrett of Levy & Kaczynski on behalf of the Plaintiff Appellant. During the class period alleged in the Third Amendment complaint, the defendant, E Trade, had an official routing policy for the orders it received from its customers that favoured its own receipt of payments to enrich itself from payments for order flow and for liquidity rebates at the expense of providing the execution to its customers that it was obliged to provide under its duty of best execution. This was an official policy of the company established by a formal corporate committee resulting in payments to E Trade during the class period of over $450 million in violation, as I said, of its duty of best execution. This policy was not disclosed to its customers, and they were harmed as a result of receiving worse prices for their trades or having their orders unfilled as a result of this secret routing policy. Studies indicate that the class-wide damages were measured in the hundreds of millions of dollars. These are all well-pleaded facts set forth in the complaint, supported by detailed analysis of both individual trades, academic studies, and analysis of the statistics disclosed by E Trade showing how they routed their policies, and they are sufficient to state a securities fraud claim on behalf of the customers of E Trade during the class period. The district court's dismissal of the complaint should therefore be reversed. The district court dismissed on two grounds, one on the ground of scienter, one on the ground of reliance. I'll address scienter first. Can you address reliance first? I can address reliance first, if Your Honor would like. Because if we disagree with you on reliance, well, if we disagree with you on either one, you lose, right? Correct, Your Honor. I'm a little bit more interested in the reliance myself, but I defer to the presider. Very good, Your Honor. The plaintiff and the class in this case rely on the presumption of reliance established by the U.S. Supreme Court in the affiliated Ute case. The purpose of the reliance requirement is to establish the necessary nexus between the misconduct and the harm suffered by the plaintiff class. It's transaction causation, as I sometimes refer to. Here you have a relationship between the broker, E Trade, and its customers that is a fiduciary of nature, and they owe the duty of execution. This is a case where the routing policy was — It's fiduciary in nature. Where is that coming from? The duty of execution has its roots in the common law. That's fundamentally a fiduciary — it's fiduciary or fiduciary in type. It's a duty of trust and confidence. There's a big difference between fiduciary and fiduciary type. The important difference — yes, Your Honor, but that's not a difference that's important here. Because the important thing here is there's no question that a broker owes a duty of disclosure to its customers in terms of routing its policies. When a customer gives an order to E Trade, it gives E Trade complete discretion as to how to route that order. And it relies, and E Trade has a duty to route that order in the best interests of that customer because it has complete discretion over that order. Your claim, as I understand it — but correct me if you think I'm describing it incorrectly — is that in making a representation about its customer execution, it made a misrepresentation. Is that right? No, Your Honor, that's not correct. I mean, our case is fundamentally an omission case. It's about this — it's about the inability of a customer to know what the routing policy of the company was. But isn't your problem that there are a lot of affirmative misrepresentations alleged in the complaint about the failure to comply with the duty of best execution? And your adversary's argument is this is primarily a misrepresentation case. Understood, Your Honor. And, you know, I would say there was — there are misrepresentations or representations alleged in the complaint the same way there are representations alleged in Affiliated Oot in exactly the same circumstances, the same way there are representations made in the Newton case in which they applied the Affiliated Oot presumption, the same way there are representations made in the Smith-Barney case we cited to in the district court here by Judge Paulley where he applied the Affiliated Oot presumption, and the other cases we cite. I think that as this Court observed in the Joseph — in the Wilson case, sorry, the label misrepresentation versus omission begs the question. It's really not very helpful. It's kind of the result because almost any misrepresentation can be cast in the nature of an omission and vice versa. So what is important when determining about the application of the Affiliated Oot presumption, you need to look at the purpose of the presumption, and you need to look at the individual — the circumstances of the claim and what is the nature of that claim. And what is critical in the — to apply the Affiliated Oot presumption is to apply is that there was a duty of disclosure owed between the defendant and the plaintiff class, plaintiff or the plaintiff class, that's separate and apart from the nature of any representations made. I mean, the representation — the duty to disclose here arises from the relationship between the customers and E-Traders, its broker. It has nothing to do with any representations made. The general duty to disclose what? Duty to disclose that it's routing practices, that it's routing in the best interest of the customers, and it's not acting in a self-interested way. So if it is going to act in a self-interested way, then it has a duty to disclose that. Have we ever sanctioned this view that — I'm receptive, but have we ever sanctioned the view that there is a general duty to disclose that we are not acting illegally, that that's the general duty of a broker or a dealer or anybody within — Sorry, go ahead. Yeah, I think it's more than just a general duty that we're not acting illegally. It's more a duty to disclose — And have we ever held that view, that that imposes a general duty to disclose that we are not acting — or that we are acting illegally? That's really your — And, Your Honor, where I'm trying to draw a difference here is that it's not really a question of legality versus illegality. It's more the exact nature of why this is — of the routing policy and its effect on the trades or the orders that are presented. So we would analogize it, for instance, to the policy that existed in Newton, for instance. What is it that E-Trade was supposed to disclose, in your view? Well, to avoid its — to avoid violating, I guess, Rule 10b-5 in the context of these trades, it would have to disclose that it routes orders in a way designed to maximize its own receipt of payments without regard to execution quality. Failure to comply with the best execution. That in and of itself would be prima facie evidence, essentially an admission that they are not complying with their duty of best execution. But that does not point to representations that say the reverse, that is, that we are complying. They do say that they provide best execution. Yes, Your Honor. And they detail the steps that they take to comply with best execution, the factors they use in deciding how to route. They do, Your Honor. But again, that — I'm pushing — you know, I'm arguing against the argument that the fact that there are some representations about the subject matter means it's per se a representation case, not an admission case, because those sorts of representations were also present in the affiliated oot. I mean, the circumstances here, the facts here, we would submit, are almost exactly on all fours with affiliated oot. We had participation in a market, market participation by the bank in that case, but it's essentially the broker or the market maker, that was undisclosed to the customers, which enabled the bank to profit at the expense of the customers in failing to provide — exercise their duty. Your Honor, I'm receptive to this, except that the way — look, your problem was that you filed your Third Amendment complaint in August of 2017, and then Wagner comes out in November of 2017, and arguably changes the playing field a little bit. And now our precedent says if you're going to rely on a misrepresentation, then you can't try to convert what's essentially a misrepresentation into a half-truth or an admission theory. You're stuck with the misrepresentation. And you can't use the presumptive — you know, the reliance under affiliated oot. I have a couple of responses to that, your Honor, if I may. And I realize my time is up, and I appreciate the discretion allowing me to continue to answer your questions. So one, Wagner was really a fall-in-the-market case. That was a much more typical 10b-5 case where there was a representation, a corrective disclosure, a stop-drop, et cetera. So really affiliated oot was a tangential issue in that particular case. Second, Wagner can't change — That was a central issue, but go ahead. Wagner — well, the bulk of that case involved certifying a class based on the fall-in-the-market presumption rather than affiliated oot. I don't think — putting it at once — I don't think rejecting the affiliated oot reliance there affected how the class was certified in that case one bit. Second — They could have left out the affiliated oot analysis and come to the same result. I believe they could have done, your Honor, yes. And even in the lower court, affiliated oot was dealt with very briefly by Judge Shindlin below. Secondly, Wagner relied on Wilson, which, as I cited, says that the omission versus misrepresentation dichotomy isn't very helpful. You need to do a deeper analysis as to the nature of the claims. Wagner wasn't overruling Wilson, even if it could. It was adopting Wilson. So I don't think Wagner has now set out this — I don't think it's the law in this circuit that you need the kind of pure omission theory, which if there's any representation at all and, therefore, affiliated oot doesn't apply because that would go against affiliated oot itself, which would be my third point, which is that Wagner can't legislate out the affiliated oot presumption, which is essentially what that pure omission argument would do. I think, instead, you need to look at — as Wilson said, you need to look at the nature of the claims, which is how was the plaintiff damaged. The plaintiff damaged here is not damaged by any corrective disclosure. It's damaged by the actual hidden conduct itself, very similar to UBS, very similar to Newton, very similar to Smith-Barney, these cases where affiliated oot has been provided. So we would submit that affiliated oot, this is — should be properly categorized as one where — and from a practical point of view, it's not fair to put the burden on the plaintiff to prove the lines. He would have to prove that it didn't know that — about this routing policy on stuff that was never disclosed. And I never got to my primary point on Sienti, Your Honor. I'll try and address it on reply. Thank you very much. May it please the Court. Mark Greenwald, Quinn Emanuel, Urquhart & Sullivan on behalf of eTrade. Judge Codall addressed the third and the fourth versions of the complaint in this case and dismissed on two separate and independent grounds, but not the only two grounds that were available for dismissal, but each of those grounds were sufficient. And the reliance ground, Judge Codall's decision, this Court's Wagner decision, does not make it impossible for plaintiffs to plead actual reliance. Actual reliance is an element of 10b-5, has been from the beginning, and can be pled when a plaintiff identifies the alleged misrepresentations. Now, we submit eTrade didn't make any misrepresentations. eTrade does meet its best execution requirements. But here, there's an entire section of the complaint about eTrade's representations. And it's only the — The problem with actual reliance, as I think you know, is that it — once you go down that road, it makes it a little harder to certify a class. It may, Your Honor. But the question — I mean, the elements of 10b-5 are the elements of 10b-5. And actual reliance may be certifiable or may not. But the question that Judge Codall faced, that this Court faces, did this plaintiff plead himself a 10b-5 violation? And without pleading reliance, and he's disclaiming actual reliance, he's disclaiming basic, he seeks the presumption from affiliated ute. And only by really mischaracterizing the affiliated ute decision itself can he even get there. Well, he says there were misrepresentations in affiliated ute and there were — and there was an omission. And it's on all fours with this case. This is the same case, misrepresentations and an omission. But that's not — that's not accurate, Your Honor. So how do you — so how is it — what is inaccurate? Affiliated ute involved two classes of plaintiffs. One class of plaintiffs had — had misrepresentations made to them. And their — their claims went forward, and the Eighth Circuit affirmed those claims. There were a separate class of plaintiffs in affiliated ute to whom no direct misrepresentations were made. And instead, they were relying only on an omission theory that the bank had failed to tell them that they weren't acting in their best interest. And it's those plaintiffs for whom the Eighth Circuit had dismissed and it's those plaintiffs that the Supreme Court reversed and held that because they could not — they could not plead a misrepresentation since no one had made a misrepresentation directly to them, they nevertheless could continue their case because there could be a presumption of reliance when it's an omission. There was nothing for that class of plaintiffs to point to. That's the exact opposite here when this plaintiff includes in his complaint an entire section, and that's called E-Trade's promises to adhere to its duty of best execution. That's page A — page of the Appendix 125. And it goes on and on. And that — that's because we do make representations and we say we meet them. We do meet those. But that's their case. And the Wagner decision, this is not dicta. It was important to the outcome of the decision. Continuation of the case in the district court would depend on which kind of presumption those plaintiffs could rely on. And so it was necessary to determine whether the affiliated-ute decision was — the affiliated-ute presumption was at play when the case continued as a class. And the — this Court's decision just from last year is directly on point. The affiliated-ute presumption does not apply to misstatements whose only omission is the truth that the statement misrepresents. That's 875F3rd at 96. I'm not sure the panel would have gotten to Camera 5 without getting through the affiliated-ute analysis. I'm sorry. I didn't hear you. So the — I'm not sure that the panel and Wagner would have gotten to the Camera 5 issue without first getting through the affiliated-ute issue and when the presumption applies. Am I right? I would agree, Your Honor. And it was very important. You had to deal with the affiliated-ute decision. That panel — the panel and Wagner dealt with it. And it's directly on point and controls this — the outcome here, as Judge Codall found. And the complaint should be dismissed on that ground. And unless the — unless the Court has any other questions, we'll rest on our brief. Thank you. I don't want to degenerate into a did-didn't type question. of debate. But there were misrepresentations made in affiliated-ute. We refer to them in our brief. We cite the specific part in the — in the report, in the U.S. reports. So, yes, there were two classes of claims, but that was a category — that was an instance where the bank was instrumental. They had affidavits from the — they obtained affidavits from every single one of the sellers. We were to disagree with you. I think your argument is that the discussion in Wagner about affiliated-ute was essentially dicta. We were to disagree with you on that. How do you — how do you deal with Wagner? Well, I would — I mean, on the points that I've — would I — I mentioned before, which is that I don't think it's — it views itself as consistent with Wilson. And Wilson talks about omission and misrepresentation as not being a meaningful way of looking at the analysis and not being dispositive. I would refer to affiliated-ute certainly doesn't have a very pure omission. Affiliated-ute itself describes the rule as involving primary omissions. It's been described by that in subsequent Supreme Court authorities, such as Stone Ridge, for instance. And I think Wagner continues to allude to primarily. Right. Exactly. So it cannot be pure. So the real issue here is, I think, is, again, on the — you look on the relationship, the nature of the relationship between the plaintiff class here and the defendants. And this is not, if you're concerned — affiliated-ute and the reliance requirement in general is worried about unlimited liability under the 10b-5 rules. And the affiliated-ute presumption is inevitably cabined by the fact you must have a preexisting relationship separate and apart from the misrepresentation. So it's not available just to general market participants to any issuer out there. You need to have a preexisting relationship such as exists here in e-trade. And here, looking at reliance, if you assume that e-trade violated its duty of disclosure to the plaintiffs, which is, you know, you have to get through that step before you even get to reliance, then it's natural, you know, for a plaintiff, a customer, to rely on the candor of its broker in connection with its routing practices. It is not — so it is not unfair to ask for the broker to bear the burden of proving that, in fact, the customer did not — you know, in fact, knew, did not rely on the — or knew about the undisclosed routing practices. I'm just going to repeat my question. Have we ever said that? Have we ever held that? We cited cases. Certainly, the U.S. Supreme Court has talked about how the court of a broker of a duty — Has the Second Circuit ever held that? I don't think that issue has ever been presented to the Second Circuit. Oh, I'm sure it has. Have we ever held it? No. I'm not aware of a case where it's been held specifically. The Second Circuit certainly has upheld the idea that there is a duty of disclosure between — you know, a duty of candor between a broker. And I would point the — in connection with Wagner, I would point it to the cases of Newton and with lower court decisions. Krager and Zola are very similar decisions, decisions in Nebraska and by Judge Seaborg in the Northern District of California. They have applied affiliated presumption to almost exactly these circumstances. So — and just like the rule proposed by defendants here would lead to the absurd result where if E-Trade had said nothing about best execution, then they would be more liable, but were still violating the duty of best execution. They would — a presumption would apply. It's not more akin to a half-look. There are only three theories, misrepresentation, half-truth, omission. And it sounds like your theory is actually a half-truth theory. Well, I don't think I would describe it — I don't think I would describe it as — I think I would describe it as an omission theory, partly because — Even though they made a number of different statements squarely about the area that you are claiming is — that you are advancing an omission theory on. But no — but I would submit that there's no — no fraud theory can go forward without some representations. You're always going to have statements made that are going to touch on the area of the fraud. But the central representation is we are by — our order system complies with the duty of best execution. Well, but that is — as we discussed in our brief, that's almost — that's not a very — that almost has no content. Like, that's just saying I am a broker. That's all that is saying. It's the same as writing brokerage under your name, saying we comply with the duty of best execution. So the aspect of that — of those representations is to prove that they didn't disclose their order-routing policies, and, in fact, they deliberately, you know, obscured what their fact-routing practices were, which were to enrich themselves at the expense of their customers. That's where the representations are relevant here, or particularly relevant here. The key factor here is that the customers were harmed by the — with — by the — by the hidden routing policies that violated the duty of best execution. There was a preexisting duty of best — of duty of disclosure of those practices which defendants violated here. And under those circumstances, it is unfair to ask the customer to prove that, yes, I, in fact, didn't know about those secret routing policies. That is essentially what the — how you would prove reliance in this case. That's what you would have to show. And that's an impossible burden for the plaintiff. And that's the — what the — that's what Affiliated Ood is addressing by saying, no, no, it's fair to put that on the defendant to prove the actual fiduciary to prove that, in fact, the customer didn't know because we disclosed to this particular customer, or however it may be. I don't think any such evidence will exist in this case. But that is the — that is the way that the balancing, if you like, of that Affiliated Ood. It is a pragmatic test. So your argument is that the presumption applies essentially whenever a fiduciary admits to disclose information that its affirmative misrepresentations are — are false, essentially. I mean, that's what it amounts to. I think it certainly only applies when there's a preexisting duty of disclosure. Fiduciary would be the strongest example of that. Well, I don't want to — I don't want to try to define the entire universe, if you like, of when Affiliated Ood may or may not — may or may not apply. But certainly fiduciary, certainly the level of a broker-customer relationship, which I think is a fiduciary. What is a fiduciary type? Because I don't understand what a fiduciary type is in a regulated financial market. What is a fiduciary type as opposed to a fiduciary? Well, because a broker is a fiduciary or a fiduciary type to its customer, in this case. It owes a duty. It has complete discretion over its order. What's the source of the duty here? What's the precise source of the duty? Well, it's — fundamentally, it's a common law duty. And it has been — since being reflected — What common law are you talking about? Well, it would be a bit of common law. So it's not a FINRA rule. It's not based on — It's being codified in FINRA rules and SEC rules. But it's ultimate legal source. So it is a FINRA rule if it's codified. It is a FINRA rule, yes. So the duty is — so I can look at the FINRA rules and find a fiduciary duty to disclose what you wanted me to disclose. There's a FINRA rule saying that the broker has to comply with the duty of best execution and consider these factors. Newton is very explicit by pointing that just compliance with FINRA rules doesn't necessarily mean you comply with the duty of best execution because it has a common law element to it that can impose an even higher standard. So in Newton, for instance, defendants pointed to the fact that we're doing what everyone in the industry is doing, and the Third Circuit there very clearly said just complying with what the industry is doing is not enough. If the duty of best execution does have a fundamental common law fiduciary element then you have to act in the best interest of your customers. So if everyone is ripping off their customers, you don't get to do that too. So that is why the source of the rule I would say is fundamentally a common law rule, although it has got layers now of regulatory rules layered on top of it. Thank you both. Nicely argued.